Williams v Scafidi (2022 NY Slip Op 03161)

Williams v Scafidi

2022 NY Slip Op 03161

Decided on May 12, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 12, 2022

533284
[*1]Wendell C. Williams, Respondent,
v
Phyllis Scafidi, Appellant.

Calendar Date:March 22, 2022

Before:Lynch, J.P., Clark, Reynolds Fitzgerald, Colangelo and McShan, JJ.

Hancock Estabrook, LLP, Syracuse (Alan J. Pierce of counsel), for appellant.
Girvin & Ferlazzo, PC, Albany (Daniel S. L. Rubin of counsel), for respondent.

Lynch, J.P.
Appeal from a judgment of the Supreme Court (Weinstein, J.), entered April 1, 2021 in Albany County, upon a decision of the court in favor of plaintiff.
After being introduced in September 2017, the parties commenced a relationship in January 2018, the nature of which is in dispute. Throughout the month, defendant regularly visited plaintiff at his home, often staying overnight. Plaintiff maintains that their relationship was romantic, but defendant claims that it was strictly business-related, characterizing herself as plaintiff's personal assistant and companion.[FN1] On January 23, 2018, plaintiff funded defendant's purchase of a Lexus SUV for $58,538.66. Two days later, plaintiff underwent surgery. After an extended rehabilitation, he returned home in May 2018. That month, plaintiff provided defendant with $450,000 to purchase a home in Fulton County. Plaintiff claims that the funds provided for each purchase were loans, maintaining that defendant orally agreed to repay him $1,500 per month for the cost of the vehicle and to use assets from the sale of her property in Saratoga County to repay the loan for the Fulton County property. Defendant, by contrast, contends that the purchases were gifts and there was no agreement between the parties for repayment. Plaintiff also executed a last will and testament on May 8, 2018, providing a specific bequest to defendant in the sum of $250,000 and naming her as one of 15 residuary beneficiaries.
Plaintiff commenced this action for breach of contract related to the car and home purchases and sought injunctive relief to prevent defendant from selling the Fulton County property. Defendant's answer raised various affirmative defenses — including that plaintiff's claims were barred by the statute of frauds — and asserted counterclaims for sexual battery, sexual harassment and intentional infliction of emotional distress. Following discovery, defendant moved for summary judgment dismissing the complaint. Plaintiff cross-moved to amend the complaint to assert claims for unjust enrichment and promissory estoppel, as well as to strike defendant's answer and direct a default judgment in his favor pursuant to CPLR 3126. As for his request to strike defendant's answer, plaintiff asserted that defendant committed a fraud on the court by submitting a forged document during discovery and falsely testifying about its accuracy during depositions. The document at issue is a photocopy of a letter, dated May 29, 2018, that purports to contain plaintiff's signature and states that he was buying the Fulton County property for defendant "as a gift."
Supreme Court (Mackey, J.) partially granted defendant's motion to the extent of dismissing plaintiff's claims for breach of the car purchase agreement — which it concluded was barred by the statute of frauds — and for injunctive relief. As for plaintiff's cross motion, the court permitted plaintiff to amend the complaint, but denied, without prejudice, so much thereof [*2]as sought to strike defendant's answer, concluding that the record was not adequately developed at that juncture for a decision as to whether defendant had committed a fraud on the court.
Following a bench trial,[FN2] Supreme Court (Weinstein, J.), struck defendant's amended answer pursuant to CPLR 3126, finding, by clear and convincing evidence, that defendant committed a fraud on the court by submitting the May 2018 letter as an exhibit — which it determined to be a forgery — and falsely testifying about its accuracy. Although the court declined to also dismiss the counterclaims on this ground, it nevertheless concluded that they were without merit. The court ultimately found that plaintiff established his claim for unjust enrichment and was entitled to a judgment in the amount of $508,538.66 — representing the sum of the car and home purchases — plus prejudgment interest. Defendant appeals.[FN3]
Defendant contends that Supreme Court abused its discretion in striking her amended answer pursuant to CPLR 3126. We disagree. "[A] court has inherent power to address actions which are meant to undermine the truth-seeking function of the judicial system and place in question the integrity of the courts and our system of justice" (CRD CrÉances S.A.S. v Cohen, 23 NY3d 307, 318 [2014]). Under CPLR 3126, "where a court finds, by clear and convincing evidence, conduct that constitutes fraud on the court, the court may impose sanctions including . . . striking pleadings and entering default judgment against the offending part[y]" (CRD CrÉances S.A.S. v Cohen, 23 NY3d at 318; see CPLR 3126 [3]). "Fraud on the court involves wil[l]ful conduct that is deceitful and obstructionistic, which injects misrepresentations and false information into the judicial process 'so serious that it undermines . . . the integrity of the proceeding'" (CRD CrÉances S.A.S. v Cohen, 23 NY3d at 318, quoting Baba-Ali v State of New York, 19 NY3d 627, 634 [2012]). To establish such fraud, "the nonoffending party must [show] . . . that the offending party has acted knowingly in an attempt to hinder the [factfinder's] fair adjudication of the case and his [or her] adversary's defense of the action. A court must be persuaded that the fraudulent conduct, which may include proof of fabrication of evidence, perjury, and falsification of documents[,] concerns issues that are central to the truth-finding process" (CRD CrÉances S.A.S. v Cohen, 23 NY3d at 320 [internal quotation marks and citations omitted]).
During discovery, defendant submitted the May 2018 letter in an attempt to establish that the funds used to purchase the Fulton County property were a gift. The letter states, in full: "I, [plaintiff], am buying the property located [in Fulton County] from [the sellers] for [defendant], as a gift, in the amount of $450,000." It contains a signature block that purports to contain plaintiff's signature. In support of his cross motion to strike defendant's answer, plaintiff proffered [*3]a report by a handwriting expert, dated August 28, 2019, concluding that the signature appearing on the May 2018 letter was an "identical reproduction" of plaintiff's signature as set forth on his May 2018 will, and had been cut and pasted therefrom. At his deposition, plaintiff testified that he had never seen the May 2018 letter until it was shown to him during the litigation and adamantly denied having signed it. He repeated this testimony at trial and maintained that the parties had an oral agreement that the funds given for the car and home purchases were loans.
Michael Flynn, a friend of plaintiff, testified at trial that plaintiff informed him that he had "loaned [defendant] money to buy a car" and had "given her . . . money" to purchase property in Fulton County as a bridge loan, with the understanding that the funds would be repaid using proceeds from the sale of a residence that defendant owned in Saratoga County. Similarly, Michael Dozois, a former employee of plaintiff who later purchased plaintiff's business, testified that, at a meeting between himself, defendant and another individual in May 2019, defendant stated that the money for the Fulton County property was a "business deal" and, when asked about a purported agreement to pay plaintiff $1,500 per month for the car purchase, she did not deny the existence of such an agreement. Dozois understood the money given for these transactions to be loans.
For her part, defendant testified, during her August 14, 2019 deposition, that she went with plaintiff to his bank on May 29, 2018 to pick up a $440,000 bank check for the Fulton County property.[FN4] They then went to a Staples where, upon plaintiff's request and dictation, "[she] typed [up the May 2018 letter], printed it out, and [plaintiff] signed it, and [she] made a copy." She explained that plaintiff kept the original letter and explicitly denied having "superimpose[d]" the signature block from plaintiff's will — a copy of which was in her possession at that time — onto the letter. In a second deposition held on September 4, 2019, defendant changed her testimony after becoming aware that plaintiff had retained a handwriting expert who concluded that the signature on the letter was taken from his will. Despite her previous testimony, defendant now maintained that plaintiff instructed her to use the signature from his will and place it on the letter, which she claimed she did with the assistance of an employee of the store. At the same time, she acknowledged that plaintiff was physically capable of signing his own name. Defendant also testified inconsistently as to whether plaintiff had come into the Staples with her, first stating that he had and then testifying that he remained in the vehicle.
At trial, the May 2018 letter was entered into evidence, defendant repeated her story from the second deposition about how the document came into existence and she stipulated that she "[p]hotoshopped" the signature block from plaintiff's [*4]will onto the letter, maintaining that plaintiff instructed her to do so. She admitted that she made certain "misrepresentation[s]" during her depositions regarding this letter, though she was adamant that she did not lie but, rather, had misspoken.
Whether the purchase of the Fulton County property was a loan or a gift was a central issue in this litigation and, if the May 2018 letter had been credited as true and accurate, it would have established defendant's defense to plaintiff's claim regarding the transaction as a matter of law. It would have also called into question plaintiff's testimony about the nature of the car purchase agreement. In light of defendant's contradictory and incredulous testimony regarding the May 2018 letter and the circumstances surrounding the change in her story, clear and convincing evidence established that defendant not only falsified this document, but then knowingly committed perjury by testifying to its validity during her depositions and repeating such testimony at trial. Supreme Court found her testimony "utterly absurd" and we agree. On this record, Supreme Court properly found that defendant committed a fraud upon the court, warranting the imposition of sanctions (see CDR CrÉances S.A.S. v Cohen, 23 NY3d at 321; Hall v Integrity Real Estate Props., Inc., 124 AD3d 1270, 1271 [2015]; compare JNG Constr., Ltd. v Roussopoulos, 170 AD3d 1136, 1141 [2019]; Bessa v Anflo Indus., Inc., 148 AD3d 974, 976 [2017]). We recognize that striking defendant's answer was a drastic remedy, but conclude that Supreme Court acted within its discretion and struck an appropriate balance by holding defendant accountable for her willful and repeated conduct, while leaving the counterclaims intact (see CRD Créances S.A.S. v Cohen, 23 NY3d at 318; 317 W. 97 Assoc. v Dannenberg, 159 AD2d 245, 245-246 [1990]; compare Melcher v Apollo Med. Fund Mgt. L.L.C., 105 AD3d 15, 21, 24 [2013]).[FN5]
Nor can we conclude that Supreme Court erred in dismissing defendant's counterclaim for sexual battery.[FN6] Supreme Court considered the evidence related to this claim and expressly credited plaintiff's testimony that he did not engage in offensive bodily contact without defendant's consent over defendant's contrary testimony. Considering the proof and deferring to the court's credibility assessments, we cannot conclude that the court's determination was against the weight of the evidence (see Schultz v Sayada, 163 AD3d 1218, 1219 [2018]; Matter of Curtis, 83 AD3d 1182, 1183 [2011]).
Clark, Reynolds Fitzgerald, Colangelo and McShan, JJ., concur.
ORDERED that the judgment is affirmed, with costs.

Footnotes

Footnote 1: Plaintiff was in his late seventies during this time and suffered from serious health ailments. Defendant was in her early sixties and purported to provide home care services for him, though not through an agency.

Footnote 2: Defendant was pro se at trial. Although she was previously represented by counsel during the course of discovery, counsel moved to withdraw from the representation due to defendant's conduct as it pertained to the May 2018 letter. Supreme Court granted the motion in February 2020.
Footnote 3: Defendant filed a notice of appeal from Supreme Court's March 2021 order, but this Court subsequently granted her motion to deem the notice of appeal as being taken from the April 2021 judgment (see CPLR 5520 [c]). Her request for a stay pending appeal was denied (2021 NY Slip Op 74122[U] [2021]).

Footnote 4: Plaintiff had given defendant a $10,000 downpayment for the Fulton County property in early May 2018.

Footnote 5: Defendant alternatively contends that, even if Supreme Court did not abuse its discretion in striking her answer, the statute of frauds would bar plaintiff from being able to obtain a default judgment on the unjust enrichment or promissory estoppel claims. This assertion lacks merit. By properly striking defendant's answer, all traversable allegations contained in the complaint were deemed admitted and the affirmative defense that the transactions were barred by the statute of frauds was treated as though it was never raised (see CPLR 3018 [b]; Ramos v Stern, 100 AD3d 409, 409 [2012]).
Footnote 6: As defendant fails to challenge in her brief the dismissal of the sexual harassment and intentional infliction of emotional distress counterclaims, any challenge thereto has been abandoned (see Matter of North Shore Ambulance & Oxygen Serv. Inc. v New York State Emergency Med. Servs. Council, 200 AD3d 1527, 1533 n 5 [2021]).